


**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| **WILLIAM HOLLON,** | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | CIVIL ACTION NO. 9:04-CV-183 |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LOUISIANA PACIFIC CORP.,** | § | |
| *Defendant.* | § | |

### MEMORANDUM OPINION IN SUPPORT
### OF ORDER GRANTING SUMMARY JUDGMENT

The Court, having granted Defendant Louisiana Pacific Corp.'s ("Defendant") *Motion for Summary Judgment* [Clerk's doc. #29], now issues this memorandum in support of its *Order on Motion for Summary Judgment*.

**A. Background**

Facts

This is an employment case in which the Plaintiff, William Hollon, ("Plaintiff"), asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. *See Plaintiff's First Amended Complaint* [Clerk's doc. #47]. Plaintiff generally alleges that Defendant wrongfully terminated his employment because of a protected disability, specifically narcolepsy,

in violation of the ADA. The parties presented the following facts to the Court. *See Motion for Summary Judgment* and *Plaintiff's Response* [Clerk's doc. #s 29 and 34].

Defendant Louisiana Pacific employed Mr. Hollon at its OSB Manufacturing Plant in Carthage, Texas from May 5, 1997, until June 12, 2003. Mr. Hollon was terminated from Louisiana Pacific on June 12, 2003. Mr. Hollon claims that he was terminated because he has a protected disability and requested accommodations in his working conditions related to this disability. *See Response*, at p.1. Defendant asserts that it terminated Mr. Hollon because of insubordination, specifically because he did not move his desk as directed.

Issues

In its motion, Defendant first presents the issue of whether Plaintiff's claims should be time-barred because he failed to file his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days after his June 12, 2003, termination, as required by law. Plaintiff disputes this on several grounds, namely because he contends that his July 29, 2003, faxed correspondence constitutes a proper claim to the EEOC; because his prior attorney properly addressed and mailed a formal charge to the EEOC on October 2, 2003; and because the late verification of his charge relates back to his initial filing. *See Plaintiff's Response*, at p.2.

Defendant also argues that Mr. Hollon's claims should be dismissed because he cannot show that he is a qualified individual with a disability as defined by the ADA. Plaintiff counters by arguing that because he suffers from the sleeping disorder of narcolepsy, his major life activities are substantially limited, which establish him as a disabled individual.

Lastly, Defendant contends that, even assuming Plaintiff was disabled, it had a legitimate business reason to terminate him and thus acted lawfully under the ADA. Mr. Hollon argues that

-2-

Louisiana Pacific was attempting to limit, segregate and/or classify him because of his disability when it asked him to move his desk. *See Plaintiff's Response*. Therefore, according to Plaintiff, Defendant has no legitimate reason to fire him and that its decision to terminate him for refusing to move his desk was pretextual. *Id.*

**B. Discussion**

General Summary Judgment Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (Quoting Rule 56(c)); *Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir. 1996) (Citations omitted). The movant's burden is only to point out the absence of evidence supporting the non-movant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992). When the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). In order to prevail on its motion, it is therefore Defendant's burden to establish that there is an absence of a genuine issue of material fact on an essential element of Mr. Hollon's claim. *See Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

Legal Issues Presented by Defendant's Motion

I.     The Timeliness of Mr. Hollon's EEOC Charge

   a.     The Letter

A claimant must timely file his EEOC charge before he can assert suit in federal court. *See Pinkard v. Pullman-Standard, Div. of Pullman, Inc.*, 678 F.2d 1211, 1216 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983). An ADA suit, like a Title VII claim, is time-barred if the EEOC charge is not timely filed. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). A charge alleging employment discrimination under the ADA in Texas must be brought within 300 days[1] of the alleged unlawful employment practice. 42 U.S.C. §§ 2000e-5(e)(1); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 877 (5th Cir. 2003), *cert. denied,* 540 U.S. 1107 (2004).

Timely filing of the EEOC charge is not a jurisdictional prerequisite, but a precondition to filing in district court. *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863-64 (5th Cir. 1983); *see also Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981). The timeliness of the charge is a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Manning,* 332 F.3d at 880. The Supreme Court and the Fifth Circuit have both advised that the equitable doctrines of tolling and estoppel are to be applied sparingly. *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) (Quoting *Zipes*, at 393, and *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

---

[1] A plaintiff must normally file his charge of discrimination with the EEOC within 180 days after the alleged unlawful practice took place. However, in a "deferral state," such as Texas, that is, a state which has a law prohibiting the practice alleged and a state or local authority to grant or seek relief from the practices prohibited under the ADA, the plaintiff has not 180 but 300 days to file the charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *see also Seredinski v. Clifton Precision Prods. Co.*, 776 F.2d 56 (3d Cir. 1985).

The Court must examine whether Plaintiff satisfied the statutory precondition of timely filing. The parties do not dispute that the alleged act of discrimination occurred on June 12, 2003, the date of Plaintiff's termination. The EEOC records, submitted by Defendant as summary judgment evidence, show that the Dallas District Office of the EEOC received an unverified charge of discrimination from Plaintiff on June 2, 2004, and then issued a Notice of Charge of Discrimination to Defendant on June 4, 2004. *See Exhibit 1 to Defendant's Motion for Summary Judgment*. Because this is well over 300 days after the June 12, 2003, termination, Defendant argues that the charge was not timely filed and Mr. Hollon's claim is time-barred.

Plaintiff argues that his charge of discrimination was actually filed on July 29, 2003, when he faxed a letter to the EEOC describing his termination and the basis for his claim. *See Ex. B to Plaintiff's Response*. Because the letter sets forth the basis of his allegations, including his narcolepsy, his termination, his employer and his dealings with his employer, it is Plaintiff's contention that this letter could satisfy a charge of discrimination made to the EEOC.

However, the Court is not persuaded. Plaintiff relies on the EEOC regulation governing the sufficiency of charges, 29 C.F.R. § 1601.12(b), and the Supreme Court's decision in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), for the proposition that his letter equals a proper charge made to the EEOC. However, *Edelman* does not address the particular form of the charge, but rather specifically holds that the EEOC's regulation permitting a timely filer to verify his charge after the filing time has expired is valid. *Id.* at 118-19. *Edelman* speaks particularly to the "relation-back" issue. The *Edelman* Court discusses the "oath or affirmation" aspect of filing an EEOC charge, and limits it holding to that aspect of the charge, stating that there is nothing plain in reading "charge" to require an oath by definition. *Id.* at 113. In fact, Justice Souter specifically stated that the decision does not reach the issue of whether the letter itself constituted a charge under the statute

-5-


in light of the fact that neither the plaintiff nor the EEOC treated a letter as a charge. *Id*. at 119. Plaintiff cites *Edelman* for the argument that in filing a charge "a party is not required to use a particular form" and that all is required is that it "identify the parties to the dispute and describe generally the actions complained of." *See Plaintiff's Response*, at p.7.

However, in reading the case, the Court finds no such statement or holding. Plaintiff gives *Edelman* a much broader application to the meaning of a "charge" than is warranted. In fact, the relation-back principle set forth by Edelman only applies where the earlier filing actually operates as a charge. *Id. See also Manning v. Chevron Chem. Co.*, 332 F.3d 874. 878 (5th Cir. 2003), *cert. denied* 540 U.S. 1107 (2004).

The parties have not presented the Court any case law addressing the validity of a faxed and unverified letter from an individual claimant as a proper EEOC charge under 29 C.F.R. § 1601.12(b). Many cases address unverified charge forms and "intake questionnaires," but few speak to general letters such as the one presented here. *See, e.g., Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 324-25 (7th Cir. 1991); *Schleuter v. Anheuser-Busch*, 132 F.3d 455, 459 (8th Cir. 1998); *Casavantes v. California State Univ.*, 732 F.2d 1441, 1442-43 (9th Cir. 1984); *Pijnenburg v. West Geogia Health Sys.*, 255 F.3d 1304 (11th Cir. 2001).

The Fifth Circuit has yet to apply *Edelman* to facts such as the ones before the undersigned. Additionally, recent cases are actually limiting rather than expansive in their interpretation of the timeliness issue. *See, e.g., Ramirez v. City of San Antonio*, 312 F.3d 178 (5th Cir. 2002); *Manning*. Guided by this precedent, the Court believes that the Fifth Circuit would disregard the faxed letter at issue here as a proper charge.

Accordingly, the Court is not inclined to extend Plaintiff's application of *Edelman* and 29 C.F.R. § 1601.12 to the letter in this case. Defendant established, through summary judgment

evidence, that the actual charge was not timely filed. Therefore, the Court must conclude that Plaintiff's claims are time-barred under 42 U.S.C. § 2000e-5(e)(1).

      b.      The Alleged October 2, 2003 Mailing

Plaintiff alternatively argues that because his attorney submitted an EEOC charge by mail on October 2, 2003, it is to be presumed that the EEOC received it. This argument is without merit. There is no evidence presented to suggest that the October 2, 2003, charge was ever filed. The affidavits of Mr. Elder (Plaintiff's previous attorney) and Ms. Flores (his legal assistant) regarding the mailing of the charge does not change the fact that there is no such evidence of that charge in the EEOC records. *See Ex. D to Plaintiff's Response*; *Ex. 1 to Defendant's Motion*. That evidence is also irrelevant insofar as the "presumption of receipt" analysis should not be extended to cases involving specific filing requirements.

The common law presumption that an item properly mailed was received by the addressee arises only upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail. *See Konst v. Florida E. Coast Ry. Co.*, 71 F.3d 850, 851 (11th Cir. 1996). However, the Fifth Circuit has not extended this rebuttable presumption to cases involving filing requirements. *See Smith v. Fidelity & Cas. Co. of New York*, 261 F.2d 460, 462-63 (5th Cir. 1958). Some courts have in fact construed filing to mean more than mere receipt and therefore have refused to apply the presumption as evidence of filing. *See id.* Plaintiff cited no probative case law and the Court found no Fifth Circuit precedent requiring the undersigned to extend the common law mailing presumption to this case. As discussed *supra*, ADA cases have specific filing requirements, and Plaintiff has not established that the presumption of receipt necessarily extends to situations in which statutory filing requirements exist. In fact, the only Fifth Circuit cases on point are diversity proceedings in which the court applied state common law on the presumption of receipt issue. *See,*

*e.g., Monaghan v. Adkins,* 117 Fed. Appx. 923, 2004 U.S. App. LEXIS 24749, 2004 WL 2725925, No. 04-60336 (5th Cir. Dec. 1, 2004); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 943-44 (5th Cir. 1983), *cert. denied,* 464 U.S. 818 (1983); *Smith,* 261 F.2d at 462. They are therefore distinguishable from the case at bar. Accordingly, the Court will not presume, as Plaintiff requests, that the October 2003 EEOC charge allegedly mailed by Mr. Hollon's former attorney satisfies the filing requirements.

  ii.  Whether Mr. Hollon is Disabled Under the ADA

Even assuming, *arguendo*, that Plaintiff's claim is not time-barred, he cannot prove that he is disabled under the ADA, an essential element of his claim. *See Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 1999) (To establish a *prima facie* discrimination claim under the ADA, [plaintiff] must show that [he] was disabled, was qualified for the job, and was the subject of an adverse employment action because of the disability) (Internal citations omitted).

Under the ADA, disability is defined with respect to an individual as " a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). To qualify as disabled under Section 12102(2)(A), a claimant must prove that he has a physical or mental impairment, that the impairment limits a major life activity, and that the limitation on the major life activity is substantial. *Toyota Motor Mfg., Ky., v. Williams*, 534 U.S. 184, 194-95 (2002) (Citing 42 U.S.C. § 12102(2)(A)); *see also Dupre*, 242 F.3d at 613.

Plaintiff contends that he suffers from the impairment of narcolepsy. Even assuming that this constitutes a physical impairment as required by the statute, the crux of the inquiry becomes whether narcolepsy in fact substantially limits one of Mr. Hollon's major life activities. *Toyota*, at 195. Additionally, the determination of whether a plaintiff has a disability is based on the effect of

the impairment in his life, not on the name or diagnosis of the physical impairment. *Taylor v. Principal Fin. Group*, 93 F.3d 155, 164 (5th Cir. 1996) (Citing 29 C.F.R. § 1630.2(j), App.). Such a determination is made on a case by case basis. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565-66 (1999). Mr. Hollon cites working and sleeping as the major life activities that are substantially limited by his narcolepsy. *See Plaintiff's Reply*, at p.10.

The ability to work has been interpreted as a major life activity by both the EEOC regulations and Fifth Circuit case law. *See Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (Citing 29 C.F.R. § 1630.2(I)). In order to prove that he was substantially limited in the major life activity of working, Mr. Hollon must demonstrate that his narcolepsy precluded him from a class of jobs or a broad range of jobs. *Dupre*, at 615 (Citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999); *Pryor v. Trane Co.*, 138 F.3d 1024, 1027 (5th Cir. 1998)). He testified that because of his condition, he could not go every day at work without having to take a nap and that being able to take naps is critical. *See Affidavit of William Hollon, attached as an Exhibit to Plaintiff's Response*. He also states that his medication makes the problem better but does not keep him from having to take naps; it only allows him to take fewer naps. *Id.*

However, the medical records indicate that Mr. Hollon was doing "okay" with his medication and that he denied excessive daytime sleepiness. *See Exhibit 8 to Motion for Summary Judgment*. Mr. Hollon also admitted that he can still work as long as he has his medicine. *See Deposition of William Hollon, Exhibit 7 to Motion for Summary Judgment*.

The evidence also shows that Mr. Hollon actually maintained employment at other employers besides Louisiana Pacific, including Georgia Pacific Corporation from September 2004 to March 2005, subsequent to his termination from Louisiana Pacific. *See Exhibit E to Defendant's Reply to Plaintiff's Response* [Clerk's doc. #68]. The fact that he was able to obtain other jobs after

his termination suggests both that he retained the ability to "compete successfully with similarly skilled individuals" and was therefore not restricted from performing a broad range or class of jobs. *See Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998). The Georgia Pacific personnel file does not exhibit any indication that Mr. Hollon's alleged disability affected his work and, in fact, shows that he clearly designated himself as "not disabled" when he applied for a position. *See Exhibits B and C to Defendant's Reply.* This uncontroverted evidence establishes that Mr. Hollon is not precluded from a broad range of jobs and therefore he is not substantially limited in the major life activity of working.

Sleeping is not as clearly defined as a "major life activity," although some circuits have interpreted it as one. *See, e.g., Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 643 (2d Cir. 1998), *cert. denied,* 526 U.S. 1018 (1999); *McAlindin v. County of San Diego,* 192 F.3d 1226, 1233 (9th Cir. 1999)*; Steele v. Thiokol Corp.*, 241 F.3d 1248, 1253 (10th Cir. 2001) (citations omitted). The Fifth Circuit has not.

Even construing sleeping as a major life activity, the evidence simply does not support Mr. Hollon's contention that his sleeping is substantially limited. The only evidence he presents is his own testimony that no matter how much he sleeps, he is always tired; that he never feels rested, and he has to nap. *See Affidavit of William Hollon*. At the same time, Mr. Hollon acknowledged that he can engage in regular activities, such as driving a car, cooking, dressing and functioning "like a normal person." *See Deposition of William Hollon, Exhibit 7 to Motion for Summary Judgment*. Plaintiff simply has not shown that there is any issue of material fact with regard to the life activity of sleeping. By his own testimony he is able to carry on daily life. Despite his condition and the alleged difficulties with his sleep, he engages in "normal" activities and has been able to work for several employers both before and after Louisiana Pacific. The Court therefore cannot conclude that

-10-

his ability to sleep is so severely and significantly restricted that it rises to the level of "substantially limited" as defined by law. *See* 29 C.F.R. § 1630.2(j)(1)(ii). Plaintiff has not presented contradictory evidence in any way establishing that he has the inability to perform a major life activity that the average person in the general population can perform, including the ability to sleep. *See* 29 C.F.R. § 1630.2(j)(1)(I). The medical records and his own testimony show that his condition is improved with medication to the extent that he can work and carry on daily life. The summary judgment evidence therefore clearly establishes that Mr. Hollon is not "substantially limited" in any major life activity, as is required by the disability analysis. Accordingly, he cannot establish a *prima facie* claim under the ADA as a matter of law.

    iii.    <u>Defendant's Reasons for the Termination of Plaintiff</u>

    a.    A Legitimate Business Reason for Termination?

Because Mr. Hollon does not suffer from a disability within the meaning of the ADA and therefore cannot demonstrate that Louisiana Pacific regarded him as having a disability within the meaning of the Act, it follows that he could not have been terminated because of his disability. *Taylor v. Blue Cross and Blue Shield of Texas, Inc.*, 55 F.Supp. 2d 604, 611 (N.D. Tex. 1999). However, even if Mr. Hollon could establish a *prima facie* case for disability, his claims would still fail because summary judgment evidence shows that Louisiana Pacific had a legitimate, nondiscriminatory reason for discharge. *See id.*

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production is a light one, and the production of any evidence which, taken as true, would permit the conclusion that there was

a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden. *Taylor*, at 613 (Citations omitted).

Louisiana Pacific maintains that it terminated Mr. Hollon because of his insubordination. Specifically, the evidence shows that Ed Wheat, Mr. Hollon's supervisor in the electric department at Louisiana Pacific, instructed him to move his work desk from a back office area to a more public area to discourage him from sleeping and to move him away from an electrical panel. *See Affidavit of Ed Wheat, Ex. 3 to Motion for Summary Judgment.* Mr. Hollon refused to move his desk despite repeated orders by Mr. Wheat for him to do so. *Id*. He was therefore terminated for insubordination. *Id*. The decision to terminate for insubordination was supported by Mr. Wheat's supervisor, Darcy Lefsrud, and Human Resources Manager James Reider. *Id*.

It is clear that insubordination is a legitimate business reason for firing Mr. Hollon. *See Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001) (Citing *Chaney v. New Orleans Pub. Facility Mgmt*., 179 F.3d 164, 167 (5th Cir. 1999) ("The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action.") The evidence also shows that Mr. Hollon napped regularly during his employment at Louisiana Pacific. *See Affidavit of William Hollon* and *Affidavit of John Reider, Ex. 2 to Motion for Summary Judgment*. There is no evidence suggesting that Mr. Hollon was ordered to refrain from napping at the time he was fired or given instructions specifically affecting his alleged disability. He does testify that he was verbally reprimanded[2], but the evidence undisputedly shows that he was never terminated for the napping or formally reprimanded. Rather, he was terminated because he was simply ordered to move his desk to a different work area, which he refused to do. Mr. Hollon's

---

[2]*See Affidavit of William Hollon.*

contention that he was being "punished" for sleeping and that moving his desk was segregating or classifying him because of his disability is off point. He had concerns that moving his desk would make him "stick out like a sore thumb," and thus apparently felt that he was being punished and segregated. *See Affidavit of William Hollon*. However, Mr. Hollon's personal feelings and theory on Louisiana Pacific's reasons for his termination are irrelevant. They have carried their burden in establishing that they fired him for a legitimate business reason, insubordination, and therefore the Court must agree with this as a legitimate nondiscriminatory reason for the termination. *See Davis v. Dallas Area Rapid Transit*, 393 F.3d 309, 320 (5th Cir. 2004).

      b.      Whether Louisiana Pacific's Reasoning Was Pretextual

The burden then shifts to the plaintiff to demonstrate that the proffered reason is not the true reason for his termination, i.e. that the given reason is "pretextual." *See Burdine*, 450 U.S. at 256; *Davis* at 321. A plaintiff seeking to survive summary judgment at this juncture must point to some evidence establishing that the employer's reason is pretextual. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

Mr. Hollon again points to his own testimony which alleges that Louisiana Pacific never accommodated his disability or allowed him to take "strategic" naps. *See Plaintiff's Response.* His pretext argument therefore hinges on whether Louisiana Pacific was aware of and recognized his disability. The only evidence showing that Mr. Hollon ever notified Louisiana Pacific of his condition is the *Return to Work or School* note from his doctor. *See Exhibit A to Affidavit of William Hollon*. The document notably dates back to April of 1998, yet the evidence shows that Mr. Hollon did not present it to Louisiana Pacific until December 2002. *See Affidavit of James Reider, Exhibit 2 to Motion for Summary Judgment*. The outdated form also merely states that he "may need to take strategic naps" and needs to work a regular day time shift. There is no mention of his specific

condition, that he is under a disability or that his ability to work is limited by his condition. The undisputed testimony establishes that Mr. Hollon never informed Louisiana Pacific that he considered himself to be disabled, to suffer from the condition of narcolepsy or that he required a nap while at work. *Id.* Accordingly, Louisiana Pacific's reason for termination could not have been pretextual because Mr. Hollon never fully apprised them of his allegedly disabling condition. Even if Louisiana Pacific were made aware of any sleep problems, it accommodated Mr. Hollon by permitting his pattern of napping and never formally disciplined him for it. *Id.* The Court simply finds that there is no evidence to suggest that Louisiana Pacific acted with pretextual reasons when it terminated Mr. Hollon. In light of the circumstances at bar, it would not be possible for such a pretextual motive to even exist.

Plaintiff cites *Desert Palace v. Costa*, 539 U.S. 90 (2003) in support of his proposition that both direct and circumstantial evidence exists showing that his refusal to move his desk was not the true reason for his firing. *See Plaintiff's Reply*. Not only do Mr. Hollon's claims not fall under any interpretation of *Desert Palace*,[3] but he simply has not created a fact issue as to whether Louisiana Pacific's adverse employment decision was, even in part, motivated by discriminatory animus. *See Roberson v. Alltel Information Services*, 373 F.3d 647, 652 (5th Cir. 2004). Accordingly, the result remains the same because he has not provided direct or circumstantial evidence from which a reasonable jury could logically conclude that disability was a motivating factor in his termination. *Id.*

---

[3] *Desert Palace* held that direct evidence of discrimination was not required to obtain a Title VII pretextual mixed-motive instruction. *Id.* at 101-02. It explicitly addressed jury instructions, and did not affect the summary judgment burden-shifting framework. The Fifth Circuit also has not interpreted the case as affecting the summary judgment framework in an employment discrimination case. *See Roberson v. Alltel Information Services*, 373 F.3d 647, 651 (5th Cir. 2004).

The evidence clearly establishes that there is no fact issue on Louisiana Pacific's legitimate reason for terminating Mr. Hollon. In conducting the analysis on a case by case basis, as required, the Court considers the strength of the plaintiff's *prima facie* case and the probative value of the proof that the employer's reasoning is false. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000). Having concluded that Mr. Hollon cannot establish a *prima facie* claim as a matter of law, *supra*, and that the evidence clearly supports Louisiana Pacific's legitimate reason for terminating Mr. Hollon, the Court finds ample support for its decision on Plaintiff's pretext argument. Accordingly, the undersigned concludes that Defendant's *Motion for Summary Judgment* should be granted on this issue as well.

    C.    Conclusion of the Court

For the reasons stated herein, and as previously ordered by the Court[4], Defendant's *Motion's for Summary Judgment* is granted in its entirety. Plaintiff's *First Amended Complaint* [Clerk's doc. #47] is **DISMISSED** with prejudice and summary judgment is entered in favor of Defendant, Louisiana Pacific Corporation. Final judgment shall be entered separately.

So ordered.

**SIGNED** this the **14** day of **June, 2005.**

_____
Thad Heartfield
United States District Judge

---

[4]*See Order on Motion for Summary Judgment* [Clerk's doc. #76].